**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

TERRY OWENS, ET AL.                    CIVIL ACTION NO. 24-1135

VERSUS                                 JUDGE S. MAURICE HICKS, JR.

CITY OF SHREVEPORT, ET AL.             MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is a Partial Motion to Dismiss for Failure to State a Claim by Defendants, City of Shreveport (the "City"), Rodney Medlin, Marcellas Anderson, Brandon Davenport, Ryan Dailey, Michael Mills, Michael Shulz, and Jonah Johnson (collectively, "Defendants"). See Record Document 14. Plaintiffs Terry Owens and Jordan Owens opposed. See Record Document 16. Plaintiffs also submitted a supplemental memorandum in opposition. See Record Document 19. Defendants replied. See Record Document 24. For the reasons stated below, Defendants' Partial Motion to Dismiss for Failure to State a Claim (Record Document 14) is **GRANTED IN PART AND DENIED IN PART**.

**BACKGROUND**

The following facts are drawn from the Complaint and are assumed true for the purposes of this motion.

On or about August 3, 2023, the City of Shreveport cited Plaintiffs' neighbor for having illegally parked vehicle(s) in her yard. See Record Document 1 at ¶ 12. Plaintiff Jordan Owens confronted the city workers contesting the correctness of the parking violations that were issued. See id. On or about August 7, 2023, Plaintiff Terry Owens questioned Denzell Thomas ("Thomas"), a city worker, about the earlier confrontation

between Jordan Owens and city workers. See id. at ¶ 13. Thomas reported the matter to the Shreveport Police Department, alleging Terry Owens threatened him with bodily harm. See id.

On August 22, 2023, Terry Owens left his home in his vehicle with his son Jordan Owens as a passenger, and Officers Medlin and Dailey stopped the vehicle shortly thereafter. See id. at ¶ 14. Officer Medlin alleged that Terry Owens was stopped for illegally tinted windows, and he was cited for an expired inspection sticker. See id. Terry and Jordan Owens began recording the encounter, and Officer Medlin became irate and threatened to arrest them for recording him. See id. at ¶ 15. Officer Medlin then called for backup. See id. Officers Anderson, Davenport, and Shulz arrived on the scene and identified Terry Owens as the individual who had allegedly physically threatened Thomas, the city worker. See id. at ¶ 15.

Terry Owens exited the vehicle and attempted to present his identification card when he was assaulted by Officers Anderson, Dailey, Davenport, and Shulz. See id. at ¶ 16. Officer Medlin slammed Terry Owens against the vehicle, and then Officers Davenport, Mills, and Shulz handcuffed Terry Owens behind his back. See id. Terry Owens complained about the handcuffs' tightness, but the officers refused to adjust the handcuffs. See id. The handcuffs caused bruising to Terry Owens' wrists and contributed to an elbow injury. See id.

Jordan Owens, the passenger, was forcibly removed from the vehicle and handcuffed because he allegedly refused to present an identification card. See id. at ¶ 17. Jordan Owens produced identification and was released without any charges. See id.

Terry Owens was always compliant and was booked by Jailer Johnson into the Shreveport City Jail on charges of having an improperly tinted windshield, resisting an officer, and operating a vehicle without improper equipment. See id. at ¶ 18. During booking, Officer Medlin twisted Terry Owens' arm causing an elbow fracture. See id. at ¶ 27. Additionally, Jailer Johnson twisted Terry Owens' arm which contributed to the elbow fracture. See id. at ¶ 18. Then, Jailer Johnson pushed and slammed Terry Owens' head and body into a wall and pushed Terry Owens onto a metal rack without reason. See id. Terry Owens posted a cash bond on August 23, 2023, and was released the same day. See id. All charges against Terry Owens were dismissed on January 22, 2024. See id. at ¶ 19.

Terry Owens asserts that Defendants violated his First, Fourth, and Fourteenth Amendment rights under the U.S. Constitution for false arrest, retaliatory arrest, malicious prosecution, and excessive force. See id. at ¶¶ 23–27. Terry Owens further asserts that the City is liable for failing to properly train officers in apprehending, securing, and handcuffing large individuals, as well as how to respond to complaints about handcuffing. See id. at ¶ 28. Additionally, he asserts that the City is liable for failure to discipline Officer Medlin despite multiple past incidents involving the use of force during arrests. See id. at ¶ 29. Jordan Owens asserts that all Defendants violated his First, Fourth, and Fourteenth Amendment rights under the U.S. Constitution based on retaliatory detention. See id. at ¶¶ 23–24. Both Owens allege state law claims of negligence, battery, false arrest, malicious prosecution, and abuse of process. See id. at ¶ 30–32.

Defendants filed a Partial Motion to Dismiss seeking dismissal of all of Plaintiffs' claims except Terry Owens' claim of excessive use of force against Jailer Johnson. See

Record Document 14 at 1. Defendants contend that the claims against the officers are barred by qualified immunity. See id. at 11. Defendants assert that Jordan Owens has failed to state a claim for retaliatory detention, and Terry Owens has failed to state a claim for false arrest and excessive force. See id. at 13–20. Defendants further contend that Plaintiffs have failed to allege sufficient facts to establish the Monell claims against the City. See id. at 20–24. Lastly, Defendants argue that Plaintiffs have failed to state a claim under state law for unlawful detention, false arrest, excessive force, and failure to train or supervise. See id. at 24–25.

## LAW AND ANALYSIS

### I.    Pleading and Dismissal Standards

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for pleadings that state a claim for relief and requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To determine whether a complaint is adequate under Rule 8(a)(2), courts now apply the "plausibility" standard established in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and its progeny. Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555-56. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. In deciding

on a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." Colle v. Brazos County, 981 F.2d 237, 243 (5th Cir. 1993). Additionally, courts must accept all allegations in a complaint as true. See Iqbal, 556 U.S. at 678. However, courts do not have to accept legal conclusions as fact. See id. Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive. See id. at 678–79. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id.

## II.    Summary of the Arguments

Defendants assert several arguments in the Partial Motion to Dismiss. First, Defendants argue that the claims against Rodney Medlin, Marcellas Anderson, Brandon Davenport, Ryan Dailey, Michael Mills, Michael Shulz, and Jonah Johnson are barred by qualified immunity. See Record Document 14 at 11. Defendants assert that qualified immunity insulates the officers from liability in this suit unless Plaintiffs can meet their burden of negating the qualified immunity defense. See id. at 13.

Plaintiffs oppose Defendants' qualified immunity defense as to Jordan Owens' claim for retaliatory detention by arguing that it is unreasonable for an officer to detain and handcuff a cooperative passenger of a vehicle that was stopped for illegally tinted windows. See Record Document 16 at 17.

Defendants contend that Terry Owens failed to state a claim for false arrest because he has failed to show that he was arrested without probable cause. See Record Document 14 at 15. Additionally, Defendants argue that the officers are still shielded by qualified immunity even if they mistakenly but reasonably believed there was probable

cause. See id. at 16. Thus, Defendants argue that the officers are shielded by qualified immunity because it was reasonable to believe probable cause was present. See id. at 17.

Plaintiffs oppose Defendants' argument that Terry Owens failed to state a claim for false arrest or that the claim is barred by qualified immunity by arguing that there was no probable cause or reasonable suspicion for the initial stop. See Record Document 16 at 18. Plaintiffs assert that because there was no reasonable suspicion or probable cause for the initial stop, the arrest of Terry Owens arising out of the initial stop was illegal. See id. Plaintiffs also argue that even if the expired inspection sticker provided probable cause for the arrest, arrest was not the proper procedure for such a minor violation. See id. at 20.

Defendants argue that Terry Owens has failed to state a claim for excessive force against Defendants Medlin, Anderson, Davenport, Dailey, Mills, or Shulz because Terry Owens' claim of being handcuffed too tightly does not amount to excessive force. See Record Document 14 at 18–20.

Plaintiffs oppose Defendants' argument regarding the excessive force claim because Terry Owens was not only handcuffed too tightly which caused pain, but the handcuffs also contributed to an elbow injury. See Record Document 16 at 23.

Defendants argue that Plaintiffs failed to state a Monell claim against the City because there was no violation of an official policy, and Plaintiffs have failed to show that the City's failure to supervise, train, or discipline Officer Medlin constituted "deliberate indifference" to Terry Owens' constitutional rights. Record Document 14 at 20–21. Additionally, Defendants argue that Plaintiffs have failed to demonstrate a pattern of

6

violations by Officer Medlin to support a claim against the City for inadequate training. See id. at 22.

Plaintiffs oppose Defendants' argument that the Monell claims should be dismissed because the City was aware of prior violations by Officer Medlin. See Record Document 16 at 25. Additionally, Plaintiffs argue that even if Officer Medlin is not found liable for his violations, the City should be found liable for a violation of Plaintiffs' constitutional rights when the violation was allowed through a City policy. See id. at 25–26.

Lastly, Defendants argue that the state law claims should be dismissed because Louisiana employs the same standards of analysis for the state law claims as the federal law claims. See Record Document 14 at 24. Thus, Defendants argue that because the federal law claims should be dismissed, so should the state law claims. See id.

### III.    Analysis

#### a.    False Arrest of Terry Owens

The existence of probable cause is a prerequisite to any constitutional arrest, which is a "seizure" of a person under the Fourth Amendment. See Michigan v. DeFillippo, 443 U.S. 31, 37 (1979). "Probable cause" is defined as "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Id. "The facts [constituting the basis for probable cause] must be known to the officer at the time of the arrest; post-hoc justifications based on facts later learned cannot support an earlier arrest." Club Retro, LLC v. Hilton, 568 F.3d 181, 204 (5th Cir. 2009).

The United States Court of Appeals for the Fifth Circuit has held that where qualified immunity is asserted as a defense to a false arrest, the plaintiff must show that it was "'clearly established that the circumstances with which' the officer 'was confronted did not constitute probable cause and exigent circumstances.'" Pierce v. Smith, 117 F.3d 866, 871 (quoting Anderson v. Creighton, 483 U.S. 635, 635 (1987)). "[T]here must not even 'arguably' be probable cause for the search and arrest for immunity to be lost." Brown v. Lyford, 243 F.3d 185, 190 (5th Cir. 2001) (internal quotations omitted). Qualified immunity gives "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Id. Thus, to prevail on his Section 1983 claim of false arrest, Terry Owens must show that there was not even arguable probable cause for his arrest. See Haggerty v. Tex. S. Univ., 391 F.3d 653 (5th Cir. 2004).

The Fifth Circuit has held that window tint can serve as the basis for reasonable suspicion for a traffic stop. See United States v. Palmer, 111 F.4th 588, 593 (5th Cir. 2024). The Louisiana Fourth Circuit Court of Appeal in State v. Wyatt found that an officer had reasonable suspicion to stop a vehicle to investigate a possible infraction for window tinting. 775 So. 2d 481, 483 (La. App. 4th Cir. 2000). The Complaint states that the vehicle's windows were tinted but that the windows later passed an inspection for legality.[1] See Record Document 1 at ¶ 14; Record Document 19 at 2. Additionally, the Complaint states that Terry Owens was cited for an expired inspection sticker. See Record Document 1 at ¶ 14. Plaintiffs concede that the windows were tinted. See Record Document 1 at ¶ 14. Plaintiffs have not alleged that the windows only had light tint or how it would be

---

[1] The Complaint actually states that the windows passed an inspection before the stop, but this allegation was corrected in Plaintiff's Supplemental Memorandum in Opposition to Motion to Dismiss by Defendants. The windows were inspected three days after the stop and arrest.

unreasonable for officers to stop the vehicle based on the window tint. Rather, the Complaint focuses on how the window tinting did not supply probable cause for Terry Owens' arrest. See Record Document 1 at ¶ 24.

The Louisiana Supreme Court has stated that Louisiana's window tinting law, provides for "criminal penalties." See State v. White, 1 So.3d 439, 442 (La., 2009) (referring to La. R.S. 32:361.1)). Additionally, the court in State v. Dillon has described a "violation of the tint law" as "a criminal offense." 670 So.2d 278, 282 (La. Ct. App. 1996). In Weisler v. Jefferson Parish Sheriff's Office, the Fifth Circuit granted defendants' summary judgment based on qualified immunity when the claim involved an arrest for illegally tinted windows under Louisiana law. 736 F. App'x 468, 469–70 (5th Cir. 2018). The court explained that because Louisiana state courts "have repeatedly characterized a violation of the window-tint statute as criminal, a reasonable officer could have believed that the Fourth Amendment did not prohibit him or her from arresting a person for violating it." Id. at 472. Based on the jurisprudence, the Court finds that Defendants are entitled to qualified immunity on Terry Owens's false arrest claim. It was not unreasonable for the officers to make an arrest based on the observed window tint. To be shielded by qualified immunity, Defendants need only have had arguable probable cause. See Brown, 243 F.3d at 190. Even if the officers were mistaken as to the existence of probable cause, qualified immunity applies so long as it was reasonable to believe that probable cause was present. See id. Thus, the Partial Motion to Dismiss the false arrest claim is **GRANTED**.

b. Retaliatory Arrest of Terry Owens

Terry Owens raises a retaliatory arrest claim against Defendants. See Record Document 1. According to the Fifth Circuit, "a plaintiff must show that he was engaged in

constitutionally protected activity, the officer's actions injured him, and 'the officers' adverse actions were substantially motivated against Plaintiff's exercise of constitutionally protected conduct.'" Degenhardt v. Bintliff, 117 F.4th 747, 758 (5th Cir. 2024) (citing Alexander v. City of Round Rock, 854 F.3d 298, 308 (5th Cir. 2017)).

Terry Owens alleges that his arrest was in retaliation for him previously questioning a city worker and for recording officers during his traffic stop. See Record Document 1 at ¶¶ 13–15. Terry Owens alleges that officers identified him as the individual who had "allegedly physically threatened a city worker." Id. at ¶ 15. Terry Owens also asserts that he recorded the officers during his traffic stop, and in response to his recording, Officer Medlin became "irate and aggressive, threatening to arrest them for recording him." Id. at ¶ 15.

The Court first addresses whether Terry Owens' allegation that his arrest was in retaliation for questioning city workers is sufficient to state a retaliatory arrest claim. Terry Owens contends that this questioning constituted protected activity under the First Amendment as an informal protest within the scope of the Petition Clause. See Record Document 16 at 14; Holzemer v. City of Memphis, 621 F.3d 512, 520–21 (6th Cir. 2010); U.S. Const. amend. I. The Court does not accept this argument. The Complaint simply states that Terry Owens "questioned" city workers about a prior encounter between them and his son, Jordan Owens. Record Document 1 at ¶ 13. Questioning a city worker about a past event is not equivalent to petitioning the government through a grievance. Here, Terry Owens' questioning was not a request for government action; rather, as pleaded, he was inquiring about an incident involving Jordan Owens.

Thus, regardless of whether the form of Plaintiff's conduct could be sufficient to trigger protection under the Petition Clause, the substance of the conduct alleged in the Complaint is not sufficient. Accordingly, Plaintiff's retaliatory arrest claim regarding his encounter with city workers is **DISMISSED**.

As for Terry Owens' retaliatory arrest claim regarding him recording officers, the Fifth Circuit has held that the First Amendment does protect a right to record police, and this right is only subject to reasonable time, place, and manner restrictions. See Turner v. Lieutenant Driver, 848 F.3d 678, 688 (5th Cir. 2017). Thus, Terry Owens was engaged in constitutionally protected conduct.

The Fifth Circuit has also stated that "[a] retaliation claim is only available 'when non-retaliatory grounds are in fact insufficient to provoke the adverse consequences.'" Degenhardt, 117 F.4th at 758 (citing Allen v. Cisneros, 815 F.3d 239, 244 (5th Cir. 2016)). The retaliatory motive must be a but-for cause for the adverse action taken by the officers. Nieves v. Bartlett, 587 U.S. 391, 399 (2019). Typically, a showing of probable cause would defeat a retaliatory arrest claim because probable cause shows that there was a constitutionally sufficient reason for the arrest. See id. at 406. However, the United States Supreme Court held that a plaintiff in a retaliatory arrest claim is not required to prove the absence of probable cause if he "presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." Id. at 407. If an arrest is made in a situation where an arrest is legally authorized, but officers "typically exercise their discretion not to do so," then the plaintiff is not required to show a lack of probable cause. Id. at 406.

According to the Complaint, the only possible legitimate reasons for the arrest were the window tint and the expired inspection sticker. See Record Document 1 at ¶ 18. As for the expired inspection sticker, Louisiana Revised Statutes § 32:1302 states that officers "shall give a written notice to the driver and shall send a copy to the department." Regarding the window tint, Louisiana Revised Statutes § 32:361.1 has been read by Louisiana courts to provide for criminal penalties. See White, 1 So.3d at 442. Regardless of whether an arrest is authorized for these violations, arresting the driver is not the typical response procedure for these violations. Therefore, the rule announced by the Supreme Court in Nieves is applicable here. 587 U.S. at 407. Regardless of whether there was probable cause to arrest Terry Owens, an arrest for tinted windows or an expired inspection sticker is not typical. Therefore, the Partial Motion to Dismiss the retaliatory arrest claim is **GRANTED IN PART and DENIED IN PART**.

c.  Retaliatory Detention of Jordan Owens

Jordan Owens alleges that officers detained him in retaliation for his previous complaints to city workers about towing vehicles. See Record Document 1 at ¶ 24. However, the Complaint lacks any factual allegations that officers knew of Jordan Owens' prior complaints. The Supreme Court in Lozman v. Riviera Beach stated that the plaintiff "likely could have not maintained a retaliation claim" against the officer because "there [was] no showing that the officer had any knowledge of [plaintiff's] prior speech or any motive to arrest him for his earlier expressive activities." 585 U.S. 87, 99 (2018). Additionally, the Court in Nieves found insufficient evidence of retaliation regarding one of the officers because there was no evidence that the officer had any knowledge of the plaintiff's prior conduct which would serve as the basis for retaliation. 587 U.S. at 408.

Because the Complaint fails to allege any facts showing that officers had knowledge of Jordan Owens prior complaints to city workers, this conduct cannot serve as the basis for his retaliatory detention claim.

However, the Complaint also alleges that Jordan Owens was recording the encounter with police. See Record Document 1 at ¶ 15. For the same reasons that Terry Owens's retaliatory arrest claim survives a motion to dismiss, Jordan Owens' retaliatory detention claim likewise survives—but only to the extent it is based on his recording of the incident. To the extent the claim is predicated on his prior complaints to city workers, it does not survive. Accordingly, the Partial Motion to Dismiss Jordan Owens's claim of retaliatory detention is **GRANTED IN PART and DENIED IN PART**.

      d.  Malicious Prosecution

Plaintiff Terry Owens raises a Fourth Amendment malicious prosecution claim against Defendants. See id. at ¶ 23. The Supreme Court in Thompson v. Clark stated that the primary consideration in a Fourth Amendment malicious prosecution claim is "the wrongful initiation of charges without probable cause." 596 U.S. 36, 43 (2022). The Fifth Circuit has held that a plaintiff bringing a Fourth Amendment malicious prosecution claim must prove the state law elements of the claim. Armstrong v. Ashley, 60 F.4th 262, 279 (5th Cir. 2023). The elements of a malicious prosecution claim under Louisiana law are:

> (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.

Id. (citing Gordy v. Burns, 294 F.3d 722, 727 (5th Cir. 2002)).

For the same reasons set forth above in connection with the false arrest claim, Defendants are entitled to qualified immunity on Terry Owens' malicious prosecution

claim. As discussed, Louisiana courts have consistently characterized a violation of the window tint statute as a criminal offense, and the Fifth Circuit has held that a reasonable officer could believe such a violation supports an arrest under the Fourth Amendment. See Dillon, 670 So.2d at 282; see also Weisler, 736 F. App'x at 472. Because there was at least arguable probable cause to believe a tint violation occurred, Defendants are entitled to qualified immunity. Thus, the Partial Motion to Dismiss for failure to state a federal claim of malicious prosecution is **GRANTED**.

      e.  Excessive Force

An excessive force claim requires the plaintiff show that while he was being arrested, he suffered "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." Ballard v. Burton, 444 F.3d 391, 402 (5th Cir. 2006) (internal quotations omitted). "Although a showing of 'significant injury' is no longer required in the context of an excessive force claim, 'we do require a plaintiff asserting an excessive force claim to have suffered at least some form of injury.'" Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001) (quoting Williams v. Bramer, 180 F.3d 699, 703 (5th Cir. 1999)). For example, allegations that a plaintiff was "handcuff[ed] too tightly, without more, does not amount to excessive force." Tarver v. City of Edna, 410 F.3d 745, 752 (5th Cir. 2005) (quoting Glenn, 242 F.3d at 314). The threshold for what constitutes an injury is subjective and is "defined entirely by the context in which the injury arises." Schmidt v. Gray, 399 F. App'x 925, 928 (5th Cir. 2010).

According to the Complaint, when Terry Owens exited his vehicle, he was "assaulted by Officers Anderson[,] Dail[e]y, Davenport, and [Shulz]." Record Document 1

at ¶ 16. Terry Owens alleges Officer Medlin "grabbed" him and "slammed him against the car." Id. Terry Owens also alleges he was handcuffed too tightly behind his back, which he complained about, and the handcuffs led to bruising and contributed to an elbow injury. Id. Precedent clearly states that handcuffing alone is insufficient to sustain a claim of excessive force. See Tarver, 410 F.3d at 751–52. Similarly, rough handling alone is insufficient to sustain a claim of excessive force. Additionally, there must be more than a de minimis injury. See Williams v. Bramer, 180 F.3d 699, 703 (5th Cir. 1999). Here, the bruising on Terry Owens' wrists is de minimis. Additionally, the Complaint only alleges that the handcuffs contributed to an elbow injury. See Record Document 1 at ¶ 16. Simply claiming an injury without more specificity as to what the injury was, and the severity of the injury is insufficient to sustain a claim of excessive force. Additionally, the Complaint does not allege that the handcuffing caused this injury. See id. Rather, the Complaint states that the handcuffing contributed to an elbow injury. See id.

The Complaint does allege that during booking, Officer Medlin twisted Terry Owens' arm without reason, causing a fracture to his elbow. See id. at ¶ 27. The court in Erickson v. Union Bank of Texas held that the Plaintiff's allegation of unnecessary force resulting in a fractured elbow was sufficient to withstand a frivolity screening. No. 3:04-CV-2069-K, 2006 WL 1479028, at *5 (N.D. Tex. May 30, 2006).[2] Terry Owens' allegation that Officer Medlin's unnecessary force caused him to fracture his elbow is sufficient to withstand a motion to dismiss because a specific resulting injury is alleged.

---

[2] The standard for a frivolity screening is different from the standard for a motion to dismiss for failure to state a claim. However, a claim will be dismissed in a frivolity screening if the Court finds that the Complaint fails to state a claim upon which relief may be granted. See 28 U.S.C. § 1915.

Therefore, the Partial Motion to Dismiss Terry Owens' excessive force claim is **GRANTED IN PART and DENIED IN PART**. The Partial Motion to Dismiss is **GRANTED** for the claim against Officers Anderson, Davenport, Dailey, Mills, and Shulz. The Partial Motion to Dismiss Terry Owens' excessive force claim against Officer Medlin is **DENIED**.

      f.   Monell Claims

A municipality is not liable under Section 1983 on the theory of respondeat superior. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978). Under Monell, a municipality may be liable only if its official policy or custom is the "moving force" behind the plaintiff's alleged constitutional right violation. Rivera v. Hous. Indep. Sch. Dist., 349 F.3d 244, 247 (5th Cir. 2003) (citations omitted). To succeed on a Monell claim against a municipality, a plaintiff must establish three elements: "(1) an official policy or custom; (2) of which a policy maker can be charged with actual or constructive knowledge; and (3) a constitutional violation whose moving force is that policy or custom." See Valle v. City of Houston, 613 F.3d 536, 541–42 (5th Cir. 2010) (internal quotations and citations omitted). Official policy is generally found in "duly promulgated policy statements, ordinances or regulations." Id. A policy can also be evidenced by custom. A custom is a "persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." Hinojosa v. Butler, 547 F.3d 285, 296 (5th Cir. 2008).

A municipality can be liable for failure to train, supervise, or discipline its employees "when the municipality's failure shows a deliberate indifference to the rights of its inhabitants." Sanders-Burns v. City of Plano, 594 F.3d 366, 381 (5th Cir. 2010). "Claims

of inadequate training generally require that the plaintiff demonstrate a pattern." Id. Moreover, the previous acts must be "fairly similar to what ultimately transpired and, in the case of excessive use of force, that the prior act must have involved injury to a third party." Id. Monell plaintiffs must also establish both the causal link ("moving force") and the City's degree of culpability ("deliberate indifference" to federally protected rights). Piotrowski v. City of Houston, 237 F.3d 567, 580 (5th Cir. 2001).

While Plaintiffs are not required to plead Monell claims in exhaustive detail, Plaintiffs here simply recite the elements of the claims against the City. The Complaint states that the City is liable for retaining Officer Medlin despite past incidents. See Record Document 1 at ¶ 29. As for the City's retention of Officer Medlin, the Complaint only vaguely refers to any past incidents involving Officer Medlin using force during arrests. See id. Without more specific factual allegations regarding the past conduct of Officer Medlin, this claim cannot survive.

Plaintiffs also assert that the officers were not properly trained by the City on how to apprehend and handcuff individuals. See Record Document 1 at ¶ 28. The Complaint only makes this general allegation without referring to any past incidents which could establish a pattern by Shreveport police officers of using improper handcuffing or apprehension techniques. Because Plaintiffs have failed to allege a pattern among officers involving this type of conduct, the failure to train claim against the City is inadequate.

Plaintiffs assert that the City failed to discipline Officer Medlin despite prior incidents of using force. See id. at ¶ 29. Additionally, Plaintiffs allege that the City is liable for a failure to supervise and train Officer Medlin due to his "numerous violations and

infractions of City policy." Id. at ¶ 32. The Complaint lacks specific factual allegations regarding Officer Medlin's past conduct. Although Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss (Record Document 16) refers to how officers were not disciplined after arresting Plaintiff on a known stale warrant, a Motion to Dismiss requires the Court to rely on the facts alleged in the Complaint alone. Due to the absence of specific allegations regarding Officer Medlin's prior conduct in the Complaint, the claims against the City for failure to supervise, train, and discipline are dismissed. Thus, the Partial Motion to Dismiss the Monell claims against the City is **GRANTED**.

g.  State Law Claims

Plaintiffs also allege state law claims of negligence, battery, excessive force, false arrest, malicious prosecution, and abuse of process. See Record Document 1 at ¶¶ 30–32. Defendants address Plaintiffs' state law claims only by asserting that the state law claims that mirror the federal law claims should be dismissed based on the same arguments for dismissing the federal law claims. See Record Document 14 at 24. Additionally, Defendants argue that they are insulated by qualified immunity for state constitutional claims. Id.

Qualified immunity does not apply to state law tort claims. Additionally, Defendants have made no arguments regarding the claims of negligence and battery. Following the Court's reasoning as set forth above, the Court finds that Plaintiff has pleaded sufficient facts to state plausible negligence and battery claims under Louisiana law. To the extent Plaintiffs' allegations are framed as a state law excessive force claim, that theory is properly encompassed within the negligence and battery claims and survives only as to Officer Medlin against whom the federal excessive force claim survives.

18

Under Louisiana law, the tort of false arrest requires "(1) detention of a person; and (2) the unlawfulness of such detention." Hernandez v. Theriot, 2016 WL 4118919, at *5 (M.D.La., 2016). The plaintiff bears the burden of alleging sufficient facts to show that his detention was unlawful. Here, Plaintiffs admit that the vehicle's windows were tinted, and that Terry Owens was cited for an expired inspection sticker. See Record Document 1 at ¶ 14. Although an arrest for tinted windows or an expired inspection sticker is not typical, the Court finds that an arrest for these reasons is lawful. As discussed above, Louisiana courts have repeatedly held that a violation of the window-tint statute constitutes a criminal offense. See White, 1 So. 3d at 442; see also Dillon, 670 So. 2d at 282. No Louisiana statute explicitly prohibits an arrest for an expired inspection sticker or a window tint violation. Louisiana courts have held that an arrest of an individual committing multiple traffic violations is lawful. See State v. Brumfield, 560 So. 2d 534, 537 (La. Ct. App.), writ denied, 565 So. 2d 942 (La. 1990). Louisiana Revised Statutes Louisiana Revised Statutes §§ 32:1301–1310 govern the inspection of vehicles and the requirements related to inspection stickers. Section 32:1310 specifically provides that "[a]ny person violating any of the provisions of R.S. 32:1301 through 32:1308 or of any rules and regulations established by the director as herein provided shall, upon conviction, be punished by a fine of not more than five hundred dollars or by imprisonment of not more than six months or by both such fine and imprisonment." These statutes make clear that operating a vehicle without a valid inspection sticker is a criminally punishable offense under Louisiana law. Because the facts alleged in the Complaint show that Terry Owens' detention based on window tint or an expired inspection sticker was not unlawful, the state law false arrest claim fails.

For the state law tort claim of malicious prosecution, Louisiana uses the following elements:

> (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.

Bledsoe v. Willis, 665 F. Supp. 3d 810, 818 (W.D. La. 2023), aff'd, No. 23-30238, 2023 WL 8184814 (5th Cir. Nov. 27, 2023). The malice required for such a claim "may be inferred from the lack of probable cause or inferred from a finding that the defendant acted in reckless disregard of the other person's rights." Miller v. E. Baton Rouge Par. Sheriff's Dep't, 511 So. 2d 446, 453 (La. 1987) (citations omitted). Plaintiff has alleged that he was booked on charges which were later dismissed. See Record Document 1 at ¶¶ 18–19. Additionally, Plaintiff alleges various damages resulting from the malicious prosecution claim. Id. at ¶¶ 37–38. However, Plaintiff cannot satisfy the fourth element—absence of probable cause. As discussed above in connection with the false arrest claim, Louisiana courts have repeatedly held that violations of the window-tint statute constitute a criminal offense, and operating a vehicle without a valid inspection sticker is likewise unlawful and allows for criminal penalties. See White, 1 So. 3d at 442; Dillon, 670 So. 2d at 282; La. R.S. 32:1301 et seq. As a result, the state law malicious prosecution claim fails as a matter of law.

According to Louisiana law, the elements for an abuse of process claim are "(1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding." Waguespack, Seago and Carmichael (A PLC) v. Lincoln, 768 So. 2d 287, 290–91 (La. App. 1st Cir. 2000). Abuse of process occurs when "the actor employs a legal process in a manner that although

20

technically correct, is for a wrongful and malicious purpose to obtain an unjustifiable end or an object that it was not the purpose of the particular process employed to effect." Foster v. Bias, 358 So. 3d 520, 536 (La. App. 1st Cir. 2022), writ denied, 358 So. 3d 503 (La. 2023). Terry Owens alleged that he was arrested in retaliation for previously confronting a city worker and for recording officers. See Record Document 1 at ¶¶ 14–15. Thus, Terry Owens has alleged an ulterior purpose for his arrest. However, as explained above, Terry Owens cannot show that there was an absence of probable cause for his arrest. Because he cannot demonstrate a willful act that was improper in the regular prosecution of the offenses, the abuse of process claim fails.

The Partial Motion to Dismiss is **GRANTED** as to the state law false arrest, malicious prosecution, and abuse of process claims. The Partial Motion to Dismiss is **DENIED** as to the state law negligence and battery claims, but to the extent these claims encompass an excessive force theory, they only survive as to Officer Medlin. Thus, the Partial Motion to Dismiss the state law claims is **GRANTED IN PART and DENIED IN PART.**

## CONCLUSION

Based on the reasons explained above,

**IT IS ORDERED** that Defendants' Partial Motion to Dismiss Pursuant to FRCP 12(b)(6) (Record Document 14) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the Partial Motion to Dismiss Pursuant to FRCP 12(b)(6) is **GRANTED** with respect to Plaintiffs' <u>Monell</u> claims against the City, the federal false arrest claim, Terry Owens' retaliatory arrest claim regarding him questioning city workers, Jordan Owens' retaliatory detention claim regarding his complaints to city workers, the federal malicious prosecution claim, the federal and state excessive force claim against Officers Anderson, Davenport, Dailey, Mills, and Shulz, and the state law claims for abuse of process, malicious prosecution, and false arrest. These claims are **DISMISSED**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss Pursuant to FRCP 12(b)(6) is **DENIED** with respect to Terry Owens' retaliatory arrest claim for the recording, Jordan Owens' retaliatory detention claim for the recording, the state and federal law claims for excessive force against Officer Medlin, and the state law claims for negligence and battery.

An order consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 12th day of September, 2025.

_____
JUDGE S. MAURICE HICKS, JR.
UNITED STATES DISTRICT COURT